UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


IKE WEEKS (#339028)

VERSUS                                          CIVIL ACTION

N. BURL CAIN, ET AL                             NUMBER 13-451-JWD-SCR


## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, September 16, 2014.


STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

IKE WEEKS (#339028)

VERSUS                                    CIVIL ACTION

N. BURL CAIN, ET AL                       NUMBER 13-451-JWD-SCR

## MAGISTRATE JUDGE'S REPORT

Before the court is the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody filed by Ike Weeks.

For the reasons which follow, the petition should be denied.

## I. Background

Petitioner was found guilty of one count armed robbery in the Nineteenth Judicial District Court for East Baton Rouge Parish, Louisiana. Petitioner was subsequently adjudicated an habitual offender on March 20, 2000, and was sentenced to life imprisonment.

Petitioner appealed his conviction and his habitual offender adjudication and sentence separately but asserted the following assignments of error in both appeals.

1.  There was insufficient evidence to support his armed robbery conviction.

2.  The trial court erred in admitting a suggestive photographic identification and the subsequent tainted in-court identification.

3.  The trial court erred in allowing inadmissible hearsay in the form of an anonymous tip.

The Louisiana First Circuit Court of Appeal affirmed the petitioner's conviction in *State of Louisiana v. Ike Weeks,* 2000-1419 (La. App. 1st Cir. 3/28/01), 798 So.2d 326 (Table); his habitual offender adjudication and sentence were affirmed in *State of Louisiana v. Ike Weeks,* 2000-1420 (La. App. 1st Cir. 3/28/01), 798 So.2d 326 (Table).

Petitioner sought review by the Louisiana Supreme Court, which denied review on March 28, 2002. *State of Louisiana v. Ike Weeks*, 2001-1311 (La. 3/28/02), 812 So.3d 642.

Petitioner signed his application for post-conviction relief ("PCRA") PCRA on October 7, 2002, and it was filed on November 22, 2002.[1] For the purpose of this report, the later date will be used. Petitioner asserted the following grounds for relief.

1. Hearsay evidence was improperly admitted into evidence.

2. A suggestive photographic line-up was improperly used.

3. The trial court erred in failing to advise the petitioner of his right to remain silent at his habitual offender hearing.

4. The State failed to meet its burden of proof at the habitual offender adjudication.

5. He was denied effective assistance of counsel at trial when:

---

[1] This is the filing date stated in the Commissioner's Report. The date stamped on the PCRA appears to be November 27. Even assuming the PCRA was delivered to prison officials for transmittal to the state court the day the petitioner signed it, the discrepancy in the dates does not affect the determination of whether this petition was timely filed.

a. counsel failed to file a motion to sever;

b. failed to conduct adequate pretrial investigation;

c. failed to inform the petitioner of a plea deal;

d. failed to request a circumstantial evidence jury instruction;

e. failed to object to the trial court's failure to advise him of his right to remain silent at his habitual offender adjudication; and

f. failed to object to the validity of his prior convictions used for sentence enhancement.

On March 5, 2003, the petitioner sought leave of court to file a supplemental PCRA brief to assert that he was denied effective assistance of counsel when trial counsel denied him his right to testify in his own behalf. There is no indication in the record that the petitioner's motion to supplement his PCRA was granted.

An evidentiary hearing on the PCRA was held on June 18, 2009. After the evidentiary hearing, but before the Commissioner issued his report, the petitioner filed a Motion to Correct Illegal Sentence and/or Motion Requesting Retroactive Application of Law Pursuant to LSA-R.S. 15:308(B) asserting that he was entitled to the retroactive application of certain penalty provisions enacted by the Louisiana Legislature in 2001, 2002 and 2006. On March 23, 2010 the trial court denied the motion. Petitioner filed a second and third Motion to Correct Illegal Sentence, which the trial court treated as the same motion. Both of these were denied on October 20, 2010.

The Commissioner issued his report on June 30, 2012. The trial court adopted the Commissioner's recommendation and denied the PCRA on August 13, 2012.

Petitioner sought review in the Louisiana First Circuit Court of Appeal. The Louisiana First Circuit Court of Appeal denied review. *State of Louisiana ex rel Ike Weeks v. State of Louisiana*, 2012-1505 (La. App. 1st Cir. 11/5/12). Petitioner sought review by the Louisiana Supreme Court, which denied review on May 3, 2013. *State ex rel. Ike Weeks v. State of Louisiana*, 2012-2629 (La. 5/3/13), 113 So.3d 211.

Petitioner signed his federal habeas corpus application on July 11, 2013, and it was electronically filed on the same date. Petitioner asserted the followings grounds for relief:

Ground One: The trial court erred in admitting hearsay evidence.

Ground Two: The trial court erred in finding probable cause for his arrest based on a suggestive photographic line-up and informant tip.

Ground Three: The trial court erred in failing to advise the petitioner of his right to remain silent at his habitual offender hearing.

Ground Four: The State failed to meet its burden of proof at the habitual offender adjudication.

Ground Five: He was denied effective assistance of counsel at trial when counsel:

a. failed to file a motion to sever;

b. failed to conduct adequate pretrial investigation;

c.    failed to inform the petitioner of a plea deal;

d.    failed to request a circumstantial evidence jury instruction;

e.    failed to object to the trial court's failure to advise him of his right to remain silent at his habitual offender adjudication; and

f.    failed to object to the validity of his prior convictions used for sentence enhancement.

No evidentiary hearing is required.

## II. Applicable Law and Analysis

### A. Timeliness

The respondent argued that the petitioner's federal habeas corpus petition is untimely.

Under § 2244(d), as amended by the Antiterrorism and Effective Death Penalty Act, a prisoner in custody pursuant to the judgment of a state court has a one year period within which to file an application for a writ of habeas corpus. The limitation period runs from the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. 28 U.S.C. § 2244(d)(1)(A).

As provided by § 2254(d)(2), the time during which a properly filed application for state post-conviction or other collateral review, with respect to the pertinent judgment or claim, is pending shall not be counted toward any period of limitation under this subsection. A "properly filed application" is one submitted

according to the state's procedural requirements, such as the rules governing the time and place of filing. *Lovasz v. Scig*, 134 F.3d 146, 148-49 (3rd Cir. 1998); *Galindo v. Johnson*, 19 F.Supp.2d 697, 701 (W.D. Tex. 1998). A court must look to state law to determine whether a state habeas application conforms to the state's procedural filing requirements. *Wion v. Quarterman*, 567 F.3d 146, 148 (5th Cir. 2009).

A state application is "pending" during the intervals between the state court's disposition of a state habeas corpus petition and the petitioner's timely filing of petition of review at the next level. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001). An application ceases to be "pending" within the meaning of § 2244(d)(2) when the petitioner fails to timely file an application for supervisory review at the next level. *Id*. at 407. A state court's subsequent decision to allow review may toll the time relating directly to the application for supervisory review at that level, but it does not change the fact that the application was no longer pending prior to the decision to allow review. *Id*. After the period for appeal or seeking discretionary review has lapsed, an application ceases to be pending, but a subsequent properly filed application entitles the petitioner to additional tolling beginning at the time of the "proper" filing. *Id*.

Petitioner's conviction became final on June 26, 2002.[2] From the date the petitioner's conviction became final on June 26, 2002, until November 22, 2002, the date the petitioner filed his PCRA, 148 days of the limitations period elapsed.

From November 22, 2002, the date the petitioner filed his PCRA, until August 13, 2012, the date the trial court denied the PCRA, the limitations period remained tolled.

From August 13, 2012, the date the trial court denied the PCRA, until September 12, 2012, the date the petitioner signed his Application for Supervisory Review and presumably delivered it to

---

[2] For purposes of § 2244(d)(1)(A), a state conviction becomes final by the conclusion of direct review or the expiration of the time for seeking such review. *See Causey v. Cain*, 450 F.3d 601, 606 (5th Cir. 2003) ("[A] conviction becomes final at the conclusion of direct review or when the time for such review has expired, as specified by AEDPA, regardless of when state law says finality occurs."). Normally that time expires 90 days after the state court of last resort enters its judgment. *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003). But when the defendant concludes his state-court direct appeal before it reaches the state court of last resort, "the conviction becomes final when the time for seeking further direct review in the state court expires." *Id*. This federal rule applies even where state law provides that finality occurs on a different date. *Compare* La. Code Crim. Proc. art. 922(B) (providing that the court of appeal's judgment becomes final under Louisiana law fourteen days after the rendition of judgment in all cases in which an application for a writ of review is not filed with the Louisiana Supreme Court), *and* La. Sup. Ct. R. X, § (5)(a) ("An application seeking to review a judgment of the court of appeal ... after an appeal to that court ... shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal ...."), *with Roberts*, 319 F.3d at 693 n. 15 (noting that the judgment of an intermediate court of appeals is not final under Texas law until the mandate has issued), *and id*. at 694-95 (rejecting the argument that the mandate-issuance date should determine finality under the AEDPA).

7

prison officials for filing on that date, the limitations period remained tolled.[3] The Louisiana First Circuit Court of Appeal denied review on November 5, 2012.

From November 5, 2012, the date the Louisiana First Circuit Court of Appeal denied review, until December 3, 2012, the date the petitioner signed his Application for Writ of Certiorari and/or Review From the Adverse Judgment Rendered by the First Circuit Court of Appeal, the limitations period remained tolled.

From December 3, 2012, the date the petitioner sought writs in the Louisiana Supreme Court, until May 3, 2013, the date the Louisiana Supreme Court denied review, the limitations period remained tolled.

From May 3, 2013, the date the Louisiana Supreme Court denied review, until July 11, 2013, the date the petitioner filed his federal habeas corpus application, 68 days of the limitations

---

[3] Although the petitioner's application for supervisory writs was apparently not mailed from the prison until September 14, 2012, the United States Court of Appeals for the Fifth Circuit has concluded that federal habeas courts within the State of Louisiana must apply Louisiana's "mailbox rule" when determining the filing date of a petitioner's state court filings. Therefore, pleadings submitted by a habeas petitioner are considered to be "filed" in state court as of the moment that the petitioner places them in the prison mail system for filing, not on the date that the pleadings are ultimately docketed by the receiving court. *See Causey v. Cain*, 450 F.3d 601, 607 (5th Cir. 2006).
Petitioner signed his application for supervisory writs on September 12, 2012, Since there is no evidence in the record indicating that he did not gave it to prison officials for filing on that date, September 12, 2012 shall be treated as the presumptive date of filing of the petitioner's Application for Supervisory Review.

period elapsed.

By the time the petitioner filed his federal habeas corpus application, 216 days of the limitations period had elapsed.

Petitioner's federal habeas corpus application was timely filed.

### B. Standard of Review

Section 2254(d) provides  as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(e)(1) provides as follows:

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Subsection (d)(2) of § 2254 applies to a state court's factual determination. It bars federal court relief unless the state court adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence." Subsection (d)(1) provides the standard of review for

questions of law and mixed questions of law and fact. *Drinkard v. Johnson*, 97 F.3d 751, 767-68 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107, 117 S.Ct. 1114 (1997).

The second clause of subsection (d)(1) refers to mixed questions of law and fact because it speaks of an "unreasonable application of ... clearly established Federal law." When the issue before the court is a mixed question of law and fact, the court may grant relief only if it determines that the state court decision rested on "an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court," to the facts of the case. The first clause of subsection (d)(1) refers to questions of law. When the issue raised involves a purely legal question, the court may grant relief only if it determines that a state court's decision rested on a legal determination that was "contrary to...clearly established Federal law, as determined by the Supreme Court." *Id*.

Review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, ____ U.S. ____, ____, 131 S.Ct. 1388, 1399, 179 L.Ed.2d 557 (2011); *McCamey v. Epps*, 658 F.3d 491, 497 (5th Cir. 2011). Review under § 2254(d)(1) focuses on what a state court knew and did. *Cullen v. Pinholster*, 131 S.Ct. at 1399. "[E]vidence introduced in federal court has no bearing on § 2254(d)(1) review. If a claim has been adjudicated on the merits

10

by a state court, a federal habeas corpus petitioner must overcome the limitation of § 2254(d)(1) based on the record that was before that state court." *Id.*, at 1400. State court decisions are measured against the Supreme Court's precedents as of "the time the state court renders its decisions." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S.Ct. 1166 (2003). *Pinholster* prohibits a federal court from using evidence that is introduced for the first time at a federal-court evidentiary hearing as the basis for concluding that a state court's adjudication is not entitled to deference under § 2254(d). *Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011).[4]

To determine whether a particular decision is "contrary to" then-established law, a federal court must consider whether the decision "applies a rule that contradicts [such] law" and how the decision "confronts [the] set of facts" that were before the state court. *Williams v. Taylor*, 529 U.S. 362, 405, 406, 120 S.Ct. 1495, 1519 (2000). If the state court decision "identifies the correct governing legal principle" in existence at the time, a federal court must assess whether the decision "unreasonably applies that principle to the facts of the prisoner's case." *Id.*, at 413, 120

---

[4] The Fifth Circuit Court of Appeals has held that a federal court may properly hold an evidentiary hearing when it determines, based solely on the state court record, that the state court's determination was contrary to or involved an unreasonable application of clearly established federal law. *Bobby Smith v. Burl Cain*, 708 F.3d 628, 634 (5th Cir. 2013).

S.Ct. at 1523.

**C. Ground One: Confrontation Clause Violation**

In Ground One, the petitioner argued that the trial court erred in admitting hearsay testimony regarding the contents of an anonymous tip made to Det. J.D. Hall identifying possible suspects to the armed robbery, which was a violation of LSA-C.E. art. 801. Specifically, J.D. Hall, a detective with the Armed Robbery and Burglary Section of the East Baton Rouge Parish Sheriff's Office, testified that he investigated the May 27, 1998 armed robbery at the Delchamps supermarket.[5] Det. Hall testified that he received a telephone call in which the caller identified the petitioner by name and two others by nicknames as possible suspects in the armed robbery.[6] Det. Hall testified that based on the information provided by the caller, he compiled a photographic lineup which included a photograph of the petitioner and five others.[7] Det. Hall testified that Semonne Sims identified the petitioner as one of the armed robbers.[8]

First, a federal habeas court grants relief when the petitioner is held "in custody pursuant to the judgment of a State

---

[5] Trial Transcript, p. 175.

[6] *Id*. at 176-177.

[7] *Id*.

[8] *Id*. at 177.

court only on the ground that he is in custody *in violation of the Constitution* or laws or treaties of the United States." 28 U.S.C. § 2254(a)(emphasis added). A federal habeas court asks only whether a constitutional violation infected the trial. *Pemberton v. Collins*, 991 F.2d 1218 (5th Cir. 1993). *See also, Herrera v. Collins*, 506 U.S. 390, 113 S.Ct. 853, 859 (1993). An error in the application of state law by the trial court does not provide grounds for habeas relief. *Engle v. Isaac*, 456 U.S. 107, 119, 102 S.Ct. 1558, 1567 (1982). Federal courts will not review a state court's interpretation of its own law in a federal habeas corpus proceeding. *Cook v. Morrill*, 783 F.2d 593 (5th Cir. 1986).

Insofar as the foundation of the petitioner's habeas application rests on the proper interpretation and application of state rules of evidence and jurisprudence, this is an issue not within the scope of federal habeas corpus.

To the extent that the petitioner argued that he was denied his Sixth Amendment right to confront witnesses against him, his claim is without merit.

The Confrontation Clause states that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify and the defendant had had a prior

opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. at 53-54, 124 S.Ct. at 1365.  While its protections are strong, "[t]he [Confrontation] Clause ... does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Id*. at 59, n. 9, 124 S.Ct. at 1369, n. 9. (citing *Tennessee v. Street*, 471 U.S. 409, 414, 105 S.Ct. 2078 (1985)).

What is or is not hearsay evidence in a state court trial is governed by state law. *Gochicoa v. Johnson*, 118 F.3d 440, 445 (5th Cir. 1997).  "Hearsay is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted."  LSA-C.E. art. 801(C).

Det. Hall's statement was not testimonial hearsay evidence. Det. Hall's testimony regarding the callers identification of the petitioner as a possible suspect was not offered to prove the truth of the matter asserted, but instead, was offered to explain the action taken by Det. Hall and the basis for his action.

Even assuming that Det. Hall's statement was testimonial hearsay evidence, given the considerable evidence that the petitioner committed the armed robbery, any error in its admission was harmless.

The standard for gauging the sufficiency of the evidence to support a conviction is well established.  "[T]he relevant question

is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979) (emphasis in original). Even if state law would impose a more demanding standard of proof, only the *Jackson* standard must be satisfied to maintain the constitutionality of a conviction. *Gilley v. Collins*, 968 F.2d 465 (5th Cir. 1992); *Schrader v. Whitley*, 904 F. 2d 282, 284 (5th Cir.), *cert. denied*, 498 U.S. 903, 111 S.Ct. 265 (1990). The evidence may be found sufficient to support a conviction even though the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence. *Gilley*, *supra*; *Gibson v. Collins*, 497 F.2d 780, 783 (5th Cir. 1991). The *Jackson* standard applies to both bench and jury trials. *Jackson*, 433 U.S. at 309, 311 and n. 3, 317 n. 8, 99 S.Ct. at 2783, 2785 and n. 3, 2788 and n. 8.

The substantive elements which the state must prove in order to convict a defendant are determined by state law. At the time of the petitioner's offense, armed robbery was defined as the taking of something of value belonging to another by use of force or intimidation while armed with a dangerous weapon. LSA-R.S. 14:64.

The primary evidence against the petitioner was the testimony of two eyewitnesses, Brandon Linder and Semonne "Sam" Simms. The essential evidence, viewed in the light most favorable to the

prosecution, established that shortly after midnight on May 27, 1998, while Linder was locking up a Delchamps grocery store, he and Semonne Simms, another employee, were approached by two armed men.[9] Linder and Simms were ordered back inside of the store at gunpoint.[10] Linder unlocked the office and entered with one of the robbers.[11] Linder testified that the office remained locked at all times and the office door had a spring mechanism which automatically closed the door.[12] Linder was ordered to open the safe.[13] The robber emptied a bag filled with paperwork which had been sitting on a file cabinet and ordered Linder to fill the bag with money from the safe.[14] The robber was armed with a weapon.[15] The robber then grabbed the intercom and tried to pull it out of the wall.[16] The robber did not have gloves on his hands.[17] The robber then left the office and ordered Linder to get down and to

---

[9] Trial Transcript, pp. 133-34, 140.

[10] *Id.* at 135.

[11] *Id.* at 137.

[12] *Id.*

[13] *Id.*

[14] *Id.* at 138.

[15] *Id.*

[16] *Id.* at 139.

[17] *Id.* at 140.

put his head on the ground.[18]  The robber walked down the stairs and out of Linder's sight.[19]

Semonne Sims testified that on the night of the robbery she and Linder were closing the store when two armed men came up from behind them and ordered them to go back inside the store.[20]  Sims testified that Linder and one robber went inside the office while she and the other robber remained just outside the office door.[21] Sims testified that she looked at the petitioner's face, consciously trying to remember his face.[22]  Simms testified that she identified the petitioner as one of the individuals who robbed the store during a photographic lineup.[23]

A review of all of the trial testimony clearly showed that there was more than sufficient evidence to prove that the petitioner was guilty of the crime of armed robbery beyond a reasonable doubt.  Petitioner's Ground One has no merit.

### D. Ground Two: Probable Cause to Arrest/Suggestive Lineup

In the first component of Ground Two the petitioner argued

---

[18] *Id.*

[19] *Id.*

[20] *Id.* at 145-146.

[21] *Id.* at 147.

[22] *Id.* at 147-148.

[23] *Id.* at 151-153.

that the trial court erred in finding probable cause for his arrest based on the suggestive photographic lineup derived from the anonymous tip. The gist of the petitioner's argument is that his conviction was obtained in violation of his Fourth Amendment right against unreasonable seizures because there was no probable cause to arrest him.

Fourth Amendment violations are generally not cognizable on federal habeas review. *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037 (1976). In *Stone v. Powell*, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial." *Id*. at 494, 96 S.Ct. at 3052. The Fifth Circuit has interpreted an "opportunity for full and fair litigation" to mean just that: "an opportunity." *Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978). "If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, *Stone v. Powell* bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes." *Id.*

Thus, it is the opportunity to present a Fourth Amendment claim to the state courts that is the basis of the *Stone* prohibition, without regard for whether that opportunity is

actually exercised or is unsuccessful. *Janecka v. Cockrell*, 301
F.3d 316, 320-21 (5th Cir. 2002), *cert. denied*, 537 U.S. 1196, 123
S.Ct. 1264 (2003). Even if a defendant fails to take advantage of
the opportunity to litigate a motion to suppress or assert Fourth
Amendment claims, the fact that the opportunity existed suffices
for the *Stone* bar to apply. *Id*. at 320.

The Fifth Circuit has held that the *Stone* bar applies despite
an error by the state court in deciding the merits of the Fourth
Amendment claim. *Swicegood v. Alabama*, 577 F.2d 1322, 1324-25 (5th
Cir. 1978); *Woodard v. Thaler*, 702 F.Supp.2d 738, 759-60 (S.D. Tx.
2010) ([E]ven if the state court improperly applied its own
procedural law in refusing to consider Woodard's Fourth Amendment
argument," the *Stone* bar still applies.) (citing *Moreno v. Dretke*,
450 F.3d 158, 167 (5th Cir. 2006)). Even when the state courts err
in the disposition of the Fourth Amendment claim on procedural
grounds, the *Stone* bar still applies "with equal force." *Williams
v. Brown*, 609 F.2d 216, 220 (5th Cir. 1980).

Petitioner had an opportunity to raise his unlawful seizure
claim in a motion to suppress evidence. Because the petitioner had
an opportunity for a full and fair hearing on his claim in the
state court, *Stone* forecloses review of the petitioner's Fourth
Amendment claim in a federal habeas proceeding.

In the second component of Ground Two the petitioner argued
that the suggestive photographic lineup procedure violated his due

process rights.

The Due Process Clause protects accused individuals from the use of evidence against them derived from unreliable identifications resulting from impermissibly suggestive procedures. *Neil v. Biggers*, 409 U.S. 188, 198-99, 93 S.Ct. 375 (1972). The admissibility of identification evidence is governed by a two-step analysis. *Herrera v. Collins*, 904 F.2d 944, 946 (5th Cir. 1990). First, the court must determine whether the identification procedure was impermissibly suggestive. *See id.* If the court determines that the procedure was impermissibly suggestive, the court must next determine whether, under the totality of the circumstances, the procedure posed a "substantial likelihood of irreparable misidentification." *Id*.

The Supreme Court has set out factors to be considered in determining the likelihood of misidentification. *Biggers*, 409 U.S. at 199-200, 93 S.Ct. 375. These include the opportunity of the witness to view the criminal, the witness's degree of attention during the offense, the accuracy of the witness's prior description of the assailant, the level of certainty demonstrated at the confrontation, and the length of time between the crime and the confrontation. *Id*.

The Louisiana First Circuit Court of Appeal determined that the photographic identification procedure was not impermissibly suggestive:

In ruling on the admissibility of the photographic lineup, the trial court stated that it had some reservations because defendant's picture stood out to a certain degree, but it was not enough to taint the identification. After considering the manner in which the photo lineup was compiled and conducted, and noting that the pictures are of black men of comparable ages with similar hairstyles and complexions, it is difficult to discern any undue suggestiveness in the lineup, especially in light of the fact that one victim (Mr. Linder) could not identify defendant. Ms. Simms testified that the defendant's picture "jumped out" at her as soon as she glanced at the lineup. She was able to generally describe defendant to the police immediately after the robbery, and her identification was based on her clear view of the robber in a well-lit area while her attention was specifically focused for purposes of remembering him. She testified about thinking that she should look at the robber in order to remember him. This was in spite of the fact that the robber told her to not look at him. She was certain of her identification at the photographic lineup and in court.

*State of Louisiana v. Ike Weeks,* 2000-1419, pp. 8-9. The appellate court's determination that the photographic identification procedure was reliable, and thus did not give rise to a substantial likelihood of irreparable misidentification, was neither contrary to nor an unreasonable application of *Biggers*.

Petitioner has failed to show that the state appellate court's ruling on the photographic identification issue "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S.Ct. at 786-87.

### E. Failure to Advise Rights at Habitual Offender Hearing

In Ground Three the petitioner argued that the trial court

erred in failing to advise him of his right to remain silent at his habitual offender hearing pursuant to LSA-R.S. 15:529.1(D).

As noted above, an error in the application of state law by the trial court does not provide grounds for habeas relief. *Engle v. Isaac*, 456 U.S. 107, 119, 102 S.Ct. 1558, 1567 (1982). Federal courts will not review a state court's interpretation of its own law in a federal habeas corpus proceeding. *Cook v. Morrill*, 783 F.2d 593 (5th Cir. 1986).

Because the foundation of Ground Three rests on the proper interpretation and application of a state statute, this claim is not within the scope of federal habeas corpus.[24]

**F. Ground Four: Habitual Offender Adjudication**

In Ground Four the petitioner argued that the State failed to meet its burden of proof at the habitual offender adjudication.

First, and as noted above, a federal habeas court may grant relief when the petitioner is held in custody pursuant to a judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). Federal courts will not review a state court's interpretation of its own law in a federal habeas corpus proceeding. *Cook v. Morrill*, 783 F.2d 593 (5th Cir. 1986).

---

[24] A review of the March 20, 2000, Transcript of the Habitual Offender Hearing, State Court Record, Vol. 3, pp. 3-12, showed that the petitioner did not testify at the hearing.

Insofar as the foundation of the petitioner's habeas application rests on the proper interpretation and application of state jurisprudence and procedural rules, this is an issue not within the scope of federal habeas corpus.

Second, insofar as the petitioner argued that his federal due process rights were violated during his habitual offender hearing, the claim is procedurally defaulted. Petitioner did not assert a federal claim in conjunction with his habitual offender adjudication on direct review in state court. It should be noted that although the petitioner appealed his habitual offender adjudication and sentence in *State of Louisiana v. Ike Weeks,* 2000-1420 (La. App. 1st Cir. 3/28/01), 798 So.2d 326 (Table), he filed the same brief as in his appeal relating to his substantive conviction. A federal due process claim related to his habitual offender adjudication was not asserted. As such, the appellate court reviewed the record for patent error and noted the trial court committed harmless error when it "did not advise defendant of the specific allegations contained in the habitual offender bill of information, his right to be tried as to the truth thereof, and his right to remain silent" in accordance with LSA-R.S. 15:529.1(D)(1)(a) and *State v. Griffin*, 525 So.2d 705, 706-707 (La.App. 1 Cir. 1988). *Weeks*, 2000-1420, p. 2.

Petitioner subsequently filed an application for post-conviction relief in which he argued for the first time that the

trial court failed to advise him of his right to remain silent at the habitual offender adjudication hearing pursuant to LSA-R.S. 15:529.1(D) and that his predicate offenses were not properly *Boykin*ized.[25] The trial court denied the claim on grounds that the claim was procedurally barred pursuant to La.C.Cr.P. art. 930.3, which limits the grounds on which a prisoner may seek post-conviction relief, and *Meline v. State*, 665 So.2d 1172 (La. 1996), which held that article 930.3 does not allow post-conviction challenges to sentencing errors.[26] The Louisiana Supreme Court, denied review. *State ex rel. Ike Weeks v. State of Louisiana*, 2012-2629 (La. 5/3/13), 113 So.3d 211.

Petitioner also filed a Motion to Correct Illegal Sentence but did not assert his habitual offender hearing claims therein.

When a state court decision to deny relief rests on a state law ground that is independent of the federal questions raised by the petitioner and is adequate to support the judgment, the federal courts lack jurisdiction to review the merits of the petitioner's federal claims. *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 2553 (1991); *Moore v. Roberts*, 83 F.3d 699, *reh. denied*, 95 F.3d 56 (5th Cir. 1996). The independent and adequate state ground

---

[25] Post Conviction Application In Behalf of Ike Weeks, Claim No. 3, pp. 16-18.

[26] State Court Record, Vol. 1, Commissioner's Recommendation, pp. 2-3, and Order adopting Commissioner's recommendation and denying defendant's Application for Post-Conviction Relief.

doctrine "applies to bar federal habeas when a state court decline[s] to address a prisoner's federal claims because the prisoner ha[s] failed to meet a state procedural requirement." *Coleman*, at 729-730, 111 S.Ct. at 2554.

> In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases.

*Id.*, at 731-32, 111 S.Ct. at 2554-55 (quoting *Rose v. Lundy*, 455 U.S. 509, 518, 102 S.Ct. 1198, 1203 (1982)); *Moore*, at 703.

For the independent and adequate state ground doctrine to apply, the state courts adjudicating a habeas petitioner's claim must explicitly rely on a state procedural rule to dismiss the petitioner's claims. *Moore*, at 702; *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995). The procedural default doctrine presumes that the "state court's [express] reliance on a procedural bar functions as an independent and adequate ground in support of the judgment." *Id*. Petitioner can rebut this presumption by establishing that the procedural rule is not "strictly or regularly followed." *Id*. Even if the state procedural rule is strictly and regularly followed, the petitioner can still prevail by demonstrating "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501

U.S. at 750, 111 S.Ct. at 2565; *Moore*, at 702.

Petitioner did not even attempt to establish that the procedural rule of Article 930.3 has not been "strictly or regularly followed," *Sones*, at 416, by the Louisiana state courts. Nor did the petitioner present any argument that he has overcome the procedural bar by demonstrating the necessary cause and prejudice[27] or a fundamental miscarriage of justice.[28]

### G. Ground Five: Ineffective Assistance of Counsel

In Ground Five, the petitioner argued that he was denied effective assistance of counsel. The state argued that because an evidentiary hearing was limited to a single component of the petitioner's ineffective assistance of counsel claim, the petitioner waived and/or abandoned all ineffective assistance of counsel claims except his claim that counsel was ineffective for failing to relay a plea offer to the petitioner.

---

[27] The "cause" standard requires the petitioner to show that "some objective factor external to the defense" prevented him from timely raising the claims he now advances. *Murray v. Carriere*, 447 U.S. 478, 488, 106 S.Ct. 2639, 2645 (1986). Objective factors that constitute cause include interference by officials that make compliance with the procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel at the prior occasion, and ineffective assistance of counsel in the constitutional sense. *Id*.

In addition to establishing cause for his procedural default, the petitioner must also show actual prejudice to overcome it.

[28] To prove a fundamental miscarriage of justice, the petitioner must assert his actual innocence. *Glover v. Hargett*, 56 F.3d 682, 684 (5th Cir. 1995).

There is simply no evidence in the record to support the state's argument. The trial court limited the scope of the evidentiary hearing to a single component of the ineffective assistance of counsel claim. However, the Commissioner's Report addressed all components of the petitioner's ineffective assistance of counsel claim. In addition, the petitioner sought review in the appellate courts of all components of his ineffective assistance of counsel claim. There is simply no basis upon which to find that the petitioner waived or abandoned any component of his ineffective assistance of counsel claim asserted in his PCRA.

Section 2254(d) applies to the petitioner's ineffective assistance of counsel claims because those claims were adjudicated on the merits in state-court proceedings.[29] Section 2254(d) applies even where, as in the petitioner's case, there was a summary denial. *Cullen v. Pinholster*, 131 S.Ct. at 1402. In these circumstances, the petitioner can satisfy the "unreasonable application" prong of § 2254(d)(1) only by showing that "there was no reasonable basis" for the Louisiana Supreme Court's decision.

Petitioner did not specifically argue that the state court's determination of his ineffective assistance of counsel claim was contrary to, or involved an unreasonable application of, clearly established federal law, namely *Strickland v. Washington*, 466 U.S.

---

[29] *State of Louisiana ex rel Ike Weeks v. State of Louisiana*, 2012-1505 (La. App. 1st Cir. 11/5/12); *State ex rel. Ike Weeks v. State of Louisiana*, 2012-2629 (La. 5/3/13), 113 So.3d 211.

668, 687, 104 S.Ct. 2052, 2064 (1984).

To obtain habeas relief based upon a claim of ineffective assistance of counsel, the petitioner must show "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. To prove deficient performance the petitioner must demonstrate that counsel's actions "fell below an objective standard of reasonableness." *Id.*, at 688, 104 S.Ct. at 2064. To prove prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.*, at 694, 104 S.Ct. at 2068, and that "counsel's deficient performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844 (1983). "A reasonable probability is a probability sufficient to undermine confidence in the outcome," *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; that probability requires a "substantial," not just "conceivable," likelihood of a different result, *Harrington v. Richter*, 562 U.S. 86,____, 131 S.Ct. 770, 792 (2011).

Habeas review of an ineffective assistance of counsel claim is "doubly deferential," *Knowles v. Mirzayance*, 556 U.S. 111, 112, 129 S.Ct. 1411 (2009), requiring a "highly deferential" look at counsel's performance, *Strickland, supra*, at 689, 104 S.Ct. at

2065, through § 2254(d)'s "deferential lens," *Mirzayance, supra*, at 121, n. 2, 1419 n. 2.

### 1. Motion to Sever

In the first component of his ineffective assistance of counsel claim the petitioner argued that counsel was ineffective when she failed to file a motion to sever. Petitioner argued that because evidence presented at the probable cause hearing only implicated his co-defendant, counsel was ineffective for failing to move to sever.

Under Louisiana law,[30] as well as federal law, the refusal to grant a severance will be reversed only where the trial court has abused its discretion. *Alvarez v. Wainwright*, 607 F.2d 683 (5th Cir. 1979). Petitioner must show that the refusal to sever rendered his state trial fundamentally unfair and violative of due process. *Id*. To prevail, the petitioner must show that: (1) the joint trial prejudiced him to such an extent that the trial court could not provide adequate protection; and (2) the prejudice outweighed the state's interest in economy of judicial administration. *United States v. Snarr*, 704 F.3d 368, 396 (5th Cir. 2013).

Petitioner offered no evidence to establish that his trial was fundamentally unfair or that he was prejudiced as a result of the

---

[30] *State v. Webb*, 424 So.2d 233 (La. 1982).

joint trial. Therefore, the petitioner cannot establish that he was prejudiced as a result of counsel's failure to file a motion to sever. This aspect of the petitioner's ineffective assistance of counsel claim is without merit.

## 2. Pretrial Investigation

In the second component of his ineffective assistance of counsel claim the petitioner argued that counsel was ineffective when she failed to conduct adequate pretrial investigation. Specifically, the petitioner argued that counsel failed to present an alibi defense. Petitioner argued that his mother and other unidentified family members would have testified that the petitioner was in Alabama at the time of the armed robbery.

In addition, the petitioner argued that counsel failed to subpoena an unidentified orthodontist who would have testified that the petitioner had gold teeth put in his mouth in 1989. Petitioner argued that Simms testified that she came face-to-face with the petitioner during the armed robbery but testified that she did not recall seeing any gold teeth in the petitioner's mouth.[31]

"Complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative. [Citation omitted.] Where the only evidence of a missing witnesses' testimony is from the

---

[31] Trial Transcript, p. 154.

defendant, this Court views claims of ineffective assistance with great caution." *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986).

Petitioner did not explain what his counsel was aware of at the time of trial that should have caused her to call the petitioner's mother and the other unidentified witnesses, or why the favorable witnesses (whoever they are) were not called. A prisoner's bald conclusory assertion that supposed "alibi" witnesses were not called does not serve to "overcome the strong presumption that his counsel's actions were reasonable." *Marler v. Blackburn*, 777 F.2d 1007, 1010 (5th Cir. 1985).

Petitioner has never provided any court with an affidavit (or a similar statement) from his mother or any of the unidentified witnesses suggesting what their testimony would have been. Petitioner's speculation about the effect of his mother's and the unidentified favorable witnesses' testimony falls far short of a prima facie showing of prejudice. This aspect of the petitioner's ineffective assistance of counsel claim is without merit.

### 3. Failure to Inform Petitioner of a Plea Offer

Petitioner argued that his counsel was ineffective when she failed to inform him of a plea offer. Specifically, the petitioner argued that counsel failed to communicate a plea offer of 10 years.

In the context of an ineffective assistance of counsel claim subject to AEDPA deference, "the pivotal question is whether the

state court's application of the *Strickland* standard was
unreasonable." *Richter*, 562 U.S. at ____, 131 S.Ct. at 785. While
"[s]urmounting *Strickland's* high bar is never an easy task,"
"establishing that a state court's application of *Strickland* was
unreasonable under § 2254(d) is all the more difficult." *Id*. at
788 (citations omitted). "[A] habeas court must determine what
arguments or theories supported or, as here, could have supported,
the state court's decision; and then it must ask whether it is
possible fairminded jurists could disagree that those arguments or
theories are inconsistent with the holding in a prior decision of
[the Supreme] Court." *Id*. at 786. Put simply, both the *Strickland*
standard and the AEDPA standard are "highly deferential" and "when
the two apply in tandem, review is 'doubly' so." *Id*. (citations
omitted).

Here, the petitioner asserts that counsel's failure to
communicate a 10-year plea offer constituted ineffective assistance
of counsel. Specifically, the petitioner claims that counsel never
relayed the State's 10-year plea offer, and that he would have
accepted the State's 10-year plea offer had it been communicated to
him.

In *Missouri v. Frye*, _____ U.S. _____, 132 S.Ct. 1399, 1408
(2012), the Supreme Court held that the Sixth Amendment right to
effective assistance of counsel extends to plea negotiations. In
*Frye*, the court noted the general rule that defense counsel has a

duty to communicate formal offers from the prosecution where the relevant terms and conditions may result in a lesser sentence, a conviction on lesser charges, or both. *Id*. *Frye* did not announce a new rule of constitutional law because it "merely applied the Sixth Amendment right to counsel to a specific factual context." *In re King*, 697 F.3d 1189 (5th Cir. 2012). Therefore, the decision in *Frye* may be considered when determining whether the state habeas corpus court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." § 2254(d)(1).

The facts of this case are readily distinguishable from *Frye*. After conducting an evidentiary hearing, the state habeas court found that "the petitioner was presented with the State's offer of 10 years in return for his guilty plea" and he "apparently rejected the plea, deciding to take his chances at trial."[32] *Compare Frye*, 132 S.Ct. At 1410 ("On this record, it is evident that Frye's attorney did not make a meaningful attempt to inform the defendant of a written plea offer before the offer expired."). In reaching its conclusion, the state habeas corpus court credited counsel's testimony, which it found to be credible, that she would have related all plea offers given by the State to the petitioner.[33] In addition, the state habeas corpus court noted counsel's testimony

---

[32] Commissioner's Report, pp. 6-9.

[33] *Id*. at 8.

was buttressed by the colloquy contained in the transcript of the Habitual Offender Hearing in which counsel noted that she had informed the petitioner's grandmother that the previous offer of 10 years was no longer available.[34]

At the PCRA evidentiary hearing former Assistant District Attorney Brent Stockstill testified that prior to empaneling a jury, he conveyed several plea offers to the petitioner which were rejected.[35] Stockstill testified that he went down to 10 years because the videotape of the actual crime was lost.[36] Stockstill testified that at that point the petitioner indicated that he would only take credit for time served.[37] Stockstill testified that because he did not believe that was an offer at all, he rejected the petitioner's counteroffer.[38]

Tracy Carine Berey Bosco (hereafter "Berey") testified that she was employed by the Public Defenders Office and was appointed to represent the petitioner.[39] Berey testified that generally plea negotiations were discussed on the day of trial and that it was her

---

[34] *Id.*; see also, State Court Record, Vol. 3, Transcript of Habitual Offender Hearing, pp. 10-11.

[35] State Court Record, Vol. 1, Post-Conviction Relief Hearing Transcript, pp. 6-9.

[36] *Id.* at 10.

[37] *Id.*

[38] *Id.*

[39] *Id.* at 12.

custom to take clients right outside the courtroom and communicate a plea offer.[40]  Berey testified that each time a plea was offered she would communicate the plea offer to her client and that she has never failed to do so.[41]  Berey testified that she could not recall the 10-year plea offer, but that if it was made she was certain that she communicated it to the petitioner.[42]

Petitioner testified that Berey took him outside the courtroom and communicated a plea offer of 29 years.[43]  Weeks testified that he rejected the 29 year sentence, which was tantamount to a life sentence, and went to trial.[44]  Petitioner testified that after jury selection Berey communicated a second plea offer of 25 years, which he also rejected[45] and that the 10-year plea offer, which he would have accepted, was never communicated to him.[46]  Petitioner testified that he only learned about the 10-year plea offer after reading a newspaper article following his conviction in which Berey

---

[40] *Id.* at 13.

[41] *Id.*

[42] *Id.*

[43] *Id.* at 17; 19.

[44] *Id.* at 18–19.

[45] *Id.* at 19.

[46] *Id.* at 17–18.

stated that the petitioner rejected a plea offer of 10 years.[47]

Petitioner has not, by clear and convincing evidence, rebutted the presumption of correctness owed to the state habeas court's factual determination. *See Batchelor v. Cain*, 692 F.3d 400, 405 (5th Cir. 2012) (affirming "a determination of a factual issue made by a State court shall be presumed to be correct," and that presumption must be rebutted by "clear and convincing evidence") (quoting 28 U.S.C. § 2254(e)(1)); *see also Richards v. Quarterman*, 566 F.3d 553, 563 (5th Cir. 2009) (affirming that "the state habeas court's factual determinations, including its credibility findings, are entitled to a presumption of correctness"). Petitioner's ineffective assistance of counsel claim involving the failure to communicate a 10-year plea offer cannot survive under *Strickland* and AEDPA's combined, "doubly" deferential review. *Richter*, 131 S.Ct. at 786. Because the petitioner failed to establish that counsel's performance was deficient under *Strickland*, the court need not address the issue of prejudice. *See Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir. 1984) ("[I]n addressing [an ineffective assistance of counsel] claim, we need not ... address both stages of the inquiry if an insufficient showing is made as to one.")

### 4. Special Jury Instruction

Petitioner argued that counsel was ineffective when she failed

---

[47] *Id.* at 18.

to request a special jury instruction on circumstantial evidence. Petitioner argued that because the State relied solely on circumstantial evidence a special jury charge on circumstantial evidence was warranted.

Contrary to the petitioner's assertion, he was convicted based on direct evidence, i.e., the in-court identification by an eye witness to the armed robbery.

Counsel's failure to request a special jury charge on circumstantial evidence was not deficient nor was the petitioner prejudiced. This aspect of the petitioner's ineffective assistance of counsel claim is without merit.

### 5. Right to Remain Silent

Petitioner argued that counsel was ineffective when she failed to object to the trial court's failure to advise him of his right to remain silent at his habitual offender adjudication hearing.

A review of the transcript of the Habitual Offender Hearing showed that the petitioner did not testify at the hearing.[48] As a result, the petitioner cannot show that he was prejudiced. This aspect of the petitioner's ineffective assistance of counsel claim is without merit.

---

[48] State Court Record, Vol. 3, Transcript of Habitual Offender Hearing.

## 6. Validity of Prior Convictions

Petitioner argued that counsel was ineffective when she failed to object to the validity of his prior convictions used to enhance his sentence. Petitioner did not actually contend that his guilty pleas related to the predicate convictions were not knowing and voluntary. Specifically, the petitioner argued that the State did not meet its burden of proving that he made a knowing and voluntary waiver of rights in the predicate offenses as required by *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709 (1969). Petitioner argued that as a result, counsel was ineffective for failing to object to the validity of the predicate convictions used to enhance his sentence.

The Supreme Court has held that prior convictions used for sentencing enhancement enjoy a "presumption of regularity," even if on their face they do not affirmatively indicate compliance with *Boykin*. *Parke v. Raley*, 506 U.S. 20, 30, 113 S.Ct. 517, 524 (1992). This presumption "makes it appropriate to assign a proof burden to the defendant." *Id.* Therefore, it is constitutional for a state court, at least initially, to presume the validity of prior convictions used for sentence enhancement. *Id.; United States v. Barlow*, 17 F.3d 85, 89 (5th Cir.), *cert. denied,* 513 U.S. 850, 115 S.Ct. 148 (1994) (holding that the defendant bears the burden of proving the invalidity of a prior conviction that is allegedly defective under *Boykin*).

38

A review of the transcript of the Habitual Offender Hearing showed that the following evidence was introduced related to the petitioner's predicate convictions: (1) certified copies of the entire file in Docket Number 1-94-556 for the Nineteenth Judicial District Court charging the petitioner with armed robbery and being disposed of by a plea to a responsive verdict of simple robbery; (2) certified copies of the Minutes of Docket Number 6-95-0061 of the Nineteenth Judicial District Court charging the petitioner with the distribution of cocaine which was disposed of by a responsive plea to possession of cocaine; and (3) certified copies of the entire file in Docket Number 9-98-418 for the Nineteenth Judicial District Court charging the petitioner with armed robbery which was disposed of by a jury trial and conviction.[49]

Transcripts of the plea colloquies of the underlying predicate convictions, to the extent such transcripts ever existed, are not contained in the state court record and were not attached as exhibits to either the PRCA or the federal habeas corpus application.

Under Louisiana law, prima facie proof of a prior conviction may be established by compliance with LSA-R.S. 15:529.1(F), but that is not the exclusive method; any competent evidence may be used to establish such proof. *State v. Moten*, 510 So.2d 55, 63

---

[49] State Court Record, Vol. 3, Transcript of Habitual Offender Hearing, pp. 4-7.

(La. App. 1st Cir. 1987). "Proof of identity can be established through a number of ways, including expert testimony matching the fingerprints of the accused with those in the record of the prior proceeding." *State v. Lomax*, 81 So.3d 788, 791 (La. App. 4th Cir. 2011). *See State v. Payton*, 810 So.2d 1127 (La. 2002) (discussing acceptable forms of proof).

Section 529.1 (D)(1)(b) states that "the district attorney shall have the burden of proof beyond a reasonable doubt of any issue of fact." The constitutional sufficiency of the evidence standard of *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979), most often applied to test convictions, asks whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The *Jackson* standard has been applied in at least some habeas challenges to the sufficiency of the evidence in an habitual offender hearing. *Warfield v. Warden*, 2012 WL 3067604 (W.D. La. 2012); *French v. Estelle*, 692 F.2d 1021 (5th Cir. 1982).

Assuming the *Jackson* standard applies to review of the sufficiency of the evidence to support an habitual offender adjudication, the State met the standard in this case.

Petitioner has failed to establish that counsel was deficient for failing to object to the validity of the predicate convictions. As previously noted, the petitioner does not actually contend that his guilty pleas to the predicate convictions were not knowing and

voluntary.

Even assuming, without deciding, that counsel was deficient for failing to object to the validity of the predicate convictions, there is no evidence that the petitioner was prejudiced.

### RECOMMENDATION

It is the recommendation of the magistrate judge that the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody filed by Ike Weeks be denied.

It is further recommended that a certificate of appealability be denied for the reasons set forth herein.

Baton Rouge, Louisiana, September 16, 2014.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE